**JOSEPH J. MANIA III, ESQ. (JJM 9414)**
**203 MAIN STREET, SUITE A-234**
**FLEMINGTON, NJ 08822**
**(908)806-3460**
**Attorney for Defendant(s)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Case No.  02-30742(NLW)

| | |
|---|---|
| **CLAIRE TRANSPORT, INC** | : Chapter 7 |
|  | : |
|  | : |
| **Debtor** | : |

| | |
|---|---|
| **STEVEN P. KARTZMAN, TRUSTEE** | : DOCKET NO.  07-01693(NLW) |
|  | : |
|  | : |
|  | : ADVERSARY ACTION |
|  | : |
| **Plaintiff** | : |
|  | : |
| **vs.** | : |
|  | : |
|  | :  **DEFENDANTS' AMENDED** |
|  | : **TRIAL BRIEF** |
|  | : |
|  | : |
|  | : |
| **AFFORDABLE LUXURY LIMOUSINE** | : |
| **SERVICE, INC., d/b/a ALL** | : |
| **TRANSPORTATION NETWORK and** | : |
| **MICHAEL ZAPPONE** | : |
|  | : |
| **Defendant(s)** | : |

## PRELIMINARY STATEMENT

This is the trial brief submitted by the defendants All Transportation Network ("ATN") and Michael Zappone ("Zappone").  It is the plaintiff's position that the exists a preponderance of evidence that allegedly shows that the defendants breached  the contract to purchase ther assets

(essential customer lists) of Studio Transportation, Inc., defaulted on a promissory note and defaulted on a personal guarantee issued by Zappone.   The defendants do not necessary dispute that such a standard must exist for the plantiff to prevail. The plaintiff has attempted present an "extensive" amount of evidence demonstrating alleged facts and events **before** the ATN purchased the customer lists.  The plaintiff intends to rely upon the testimony of Timothy O'Reilly who was the subject to adversary proceedings(s) brought by the plaintiff to recover fraudulent transfers and to avoid certain post-petition transfers (including the present matter) in the bankruptcy cases and those of his relatives.

However, the plaintiff has failed to produce any substantial evidence that the defendants actually purchased $4,000,000.00 worth of business pursuant to the purchase agreement.  This is the essential issue of this case.  The plaintiff has not produced any evidence that shows what occurred **after** the closing on the purchase.  Such evidence would have supported the plaintiff's allegations.  However, the plaintiff has acknowledged that he can only rely upon the defendant's own sales records that show that defendant did not and would not ever receive $4,000,000 in sales from the customer list(s) it purchased from Studio Transportation.

**STATEMENT OF FACTS**

On or about May 13, 2004, ATN entered into aAsset Sale Agreement with Studio Transportation, Inc. for essentially its customer lists and company phone number for $267,000. The purchase price was to be financed through a $237,000 promissory note issued by ATN and personally guaranteed by Zappone.

The promissory note provided that the purchase price would be adjusted periodically should the sales volume decrease from $1,000,000 per year.  Such adjustments would be based upon on a sales price of .267 cents per dollar of revenue with a cap of $267,000 . In short, ATN believed that for the purchase price of  $267,000. it would be buying up to $4,000,000  in

business from Studio Transportation. On a percentage basis this would work out at .0667 per dollar. If revenues from the purchased business produced $1,000,000 per year in revenue ATN would pay monthly payments of $5,500. If such revenues fell below $1,000,000 per year then the purchase price would be adjusted and decreased based upon the formula in the promissory note which was used to cap the maximum purchase price at ;$267,000.

Payments to Studio Transportation ceased when it was discovered that the customer lists purchased by ATN failed to produce the revenue which was allegedly represented to the defendants through the alleged sales projections of Studio Transportation. During the first year of the transction, the purchased customer lists only produced approximately $217,636.04. Applying the percentage of .0667 for the purchase price of $4,000,000 of revenues, ATN paid Studio Transportation approximately $14,527.61 for the gross revenues generated. Since the $217,636.04 fell far short of the alleged $1,000,000 annual revenue "projected" by the seller, applying the adjustment formula of .267 the purchase price should be no more than $58,108.82 The adjusted purchase price of $58, 108.82  is calculated as follows;

| | |
|---|---|
| Seller's projected annual revenue: | $1,000,000 |
| Less actual gross revenue: | $ 217,636 |
| Difference: | $ 782,364 |
| | |
| Adjustment (.267 of $782,364) | $208,891.18 |
| | |
| Original Purchase Price: | $267,000.00 |
| Less Adjustment: | $208,891.18 |
| Adjusted Purchase Price: | $ 58,108.82 |
| | |
| Less Downpayment | $14,000.00 |
| Less Amount Paid by ATN: | $14,527.61 |
| | |
| Remaining Balance on Purchase Price (after first year) | $29,581.21 |

If one were to continue using this formuala for the remaining years of the purchase agreement  it becomes clear that the defendants overpaid for the actual revenues generated.

This is calculated follows;

| | |
|---|---|
| Sellers total projected revenues (2005-2007) | $3,000,000 |
| Less actual total revenue (2005-2007): | $ 323,609 |
| Difference: | $2,676,391 |
| Adjustment (.267 of $2,676,391) | $714,596.39 |
| Remaining Balance after First Year | $ 29,581.21 |
| Less Adjustment (2005-2007) | $714,596.21 |
| Remaining Purchase Price on Year 4 | ($685,015) |

In support of this analysis the defendants have provided the plaintiff and the Court withdetailed printouts/spreadsheets.

In 2006, the plaintiff initial a series of adversary actions against Timothy O'Reilly, a principal of Studio Transportation along with Peter O'Reilly and Daniel O'Reilly to recover certain fraudulent transfer and improper post petition transfer of Claire Transport, Inc. These action included recovering the O'Reilly's interest in Studio Transport and the Promissory Note it held regarding ATN's purchase. These actions resulted in a "global" settlement in which the O'Reilly paid certain amounts to the plaintiff and turned over the "assets" of Studio Transportation. Neither ATN nor Zappone had any notice of those proceedings and as a result could not participate to protect their rights and interests regarding the purchase of the assets of Studio Transportation.

## DEFENDDANTS DID NOT RECEIVE WHAT THEY PURCHASED UNDER THE SALES AGREEMENT

There is not dispute that ATN and Studio Transportation entered into a sales agreement by which ATN agreed to purchase $4,000,000 worth of business from Studio Transportaion for a purchase price of $267,000 or .0667 per dollar of the $4,000,000. The purchase price was to be

paid through a promissory note.  Despite the plaintiff's thorough presentation of the debtor's/Studio Transportation purpoted records prior to the sale, it became quire apparent that ATN did nor receive what it had thought it had purchased.

During the first year of the agreement the projected gross revenues from Studio Transportaion's business was to be approximately $1,000,000.  However, as ATN's records indicate, the new business only produced $217,636.0 for that first year.  Pursuant to the above described calculations, ATN fully paid the appropriate amount for the business produced---$14,527.61.

If ATN based upon the above described calculations, had continued to make payments to Studio Tranportation pursuant to the terms of the sales agreement, then it would have ultimately paid far more than the business actually generated.  In light of Studio's misrepresentations and failure to deliver 4 million in sales,ATN's actions did not constitute a breach of its obligations. Neptune Research & Development , Inc.  v. Teknics Industrial Systems, Inc., et al.  235 N.J. Super 522 (App. Div.  1989).

In contrast, the plaintiff has never offered any sort of calculation to base his claims.  He simply relies on the documents without any consideration of what business was actually generated.  The plaintiff simply fails to evaluate of how the agreement was to work and how the purchase price was to be adjusted.  In short the plaintiff simply claims that the defendants owe $267,000 based upon revenues which never generated the promised total of $4,000,000 or $1,000,000 per year.

**DEFENDANTS DID NOT BREACH THE CONTRACT**

The plaintiff has argued that in essence the defendants committed an anticipatory breach of the sales agreement when the defendants stopped making payments.  However, once again the

plaintiff has ignored the existence of the adjustment formula which protected the defendants from making non-recoverable overpayments for business which did not exist.

The plaintiff would have to show that an alleged anticipatory breach exited when the contract embodied mutual and interdependent conditions and obligations, and when one party either disables itself from performing, or prevents the other from performing, or repudiates in advance its obligations under the contract and refuses to be longer bound thereby, communicating such repudiation to the other pary, the latter party is not only excused from further performance on its part, bu tmay at its option, treat the contract as terminated for all purposes of performance, and maintain an action for damages. Dun & Bradstreet, Inc. v. Wilsonart Products, Co., 130 N.J. l. 24 (1943).

In the present case the relationship between the parties centered on Studio's obligation to sell up to 4 million dollars in sales to the ATN. ATN obligation was to pay a sales priceup to total of $267,000 which would be adjusted based upon actual sales, Studio did not live up to its bargain by producing the alleged $4,000,000 in projected sales. When this became apparent to ATN, ATN merely exerecised its rights pursuant to the promissory note and adjusted the payments to Studio. In effect, since Studio failed to perform, it was Studio not ATN that breached the contract.

ATN attempted to follow the terms of the promissory note. It had made payments pursuant to the adjustment formula which allowed for changes in the purchase price. In fact ATN's actions did not constitute a breach but a continuing performance of the terms of the agreement which allowed for a change in circumstances. Lauro v. Metropolitan Life Insurance Co., 80 F.Supp. 377 (D. N.J. 1948).

It would have been ridiculous if ATN had simply continue to make payments based upon the non-existent 4 million dollars in sales that it had thought it had purchased. Since the agreement never produced the 4 million had ATN continued to perform it would have suffered

damages. In short ATN would have made non-recoverable overpayments. In light of such potential damage how could ATN be expected to perform based upon such non-existing sales. In such a situation an anticipatory breach does not exist. <u>George P Clarke Co. v. Kuebler Foundries, Inc.</u> 285 F. 568 (3rd Cir. 1922).

It is obvious that the adjustment formula was meant to satisfy any insecurity that ATN might have at to whether its purchase would actually produce the promised sales. When it became apparent that the purchased business would produce the promised 4 million it became reasonable for ATN to have doubt and when such doubts became reality ATN's performance did not constitute a breach. <u>Diskmasters, Inc v. DeWitt Equipment Corporation,</u> 555 F. 2d 1177 (3rd Cir. 1977)

## **THE PLAINTIFF HAS FAILED TO PROVE HIS CASE BY A PREPONDERANCE OF THE EVIDENCE**

The defendants do not argue with the legal principle that the parties must prove their respective case by a preponderance of the evidence. However, the defendants do dispute the plaintiff's claim that he has met this standard. The plaintiff may have presented an abundance of facts and allegation that show where the debtor/Studio Transportation claimed its business and revenues were in the years **prior** to ATN's purchase. At best, the plaintiff may have only established a prima facie case that the purchase was supposed to produce $4,000,000 and based on that speculative amount the purchase price should have been $267,000.00. It is here that the plaintiff's case fails.

In order to establish his claims, the plaintiff would have to produce a preponderance of evidence consisting of customer lists and revenue reports and/or sales records. This evidence would have to contrast sharply with ATN's sales and revenue records. The plaintiff has admitted that he has none. He can only allege what has happened prior but not during ATN's acquisition.

Throughout this adversary proceeding, the plaintiff has acknowledged that his case will depend upon an examination of ATN.s records. The plaintiff has had these records for since August, 2009. Had he examined these records he would have determined that ATN paid the appropriate price for the revenues generated . He would have found that following the adjustment formula, ATN would have ultimately overpaid for the business. Finally, the plaintiff would have determined that the adjustment formula, was the ultimately "due diligence" provision in that allowed the defendants to pay the corrected purchase price based upon actually revenues generated.

It is respectfully submitted that plaintiff's failure to consider the evidence of what actually occurred during the trasnsaction, which provides the preponderance of evidence, should result in the dismissal of the plaintiff's case.

## PLAINTIFF'S PROSECUTION OF THIS CASE PROVIDES NO BENEFIT TO THE DEBTOR ESTATE

It is widely accepted that the primary role of a chapter 7 trustee is to liquidate assets or to proceed after assets. If the trustee/plaintiff would have performed his duty and taken the time to evaluate the defendants' records he would have discovered that his claims fall far short of the appropriate amount that has already been paid by the defendants.

The trustee has retained his own law firm. As a result, should the trustee either losses or receives a small judgmne;t he benefits from the fees generated by his law firm. It is respectfully submitted that this may have little or no benefit to the debtor estate.

## CONCLUSION

As stated earlier this case is factually driven. The preponderance of the evidence lies with the defendants' records which show what was actually earned from the business produced and as a result  what was actually paid for the business generated. The plaintiff's case fails to

meet this standard. In fact a case may be made that Studio actually breached the agreement while ATN attempted to perform pursuant to the promissory note. Accordingly, the defendants respectfully request that judgment be entered in favor of the defendants.

        Respectfully submitted,

        /s/ Joseph J.Mania III
        Joseph J. Mania III
        Attorney for the Defendants