**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

```
FILED
JAMES J. WALDRON, CLERK
October 1, 2010
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy
```

|  |  |
|---|---|
| IN RE: | CHAPTER 7 |
| Claire Transport, Inc., | CASE NO.:   02-30742  (NLW) |
| Debtor. |  |
| Steven P. Kartzman, Trustee, | Adversary No.:   07-1693 |
| Plaintiff, |  |
| v. | **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| Affordable Luxury Limousine Service, Inc., d/b/a All Transportation Network and Michael Zappone. |  |
| Defendants. |  |

**Before:**     **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Adam Brief, Esq.
Mellinger, Sanders & Kartzman, LLC
101 Gibraltar Drive, Suite 2F
Morris Plains, NJ 07950
Attorneys for Trustee

Joseph J Mania, III, Esq.
Law Office of Joseph J. Mania III
203 Main St., Suite A 234
Flemington, NJ 08822
Attorneys for Defendants

This adversary proceeding came before the court for trial on January 15, 2010. In connection with the trial the Trustee filed a motion in limine to exclude defendants' evidence and testimony at trial. As set forth at greater length below, the court granted the Trustee's motion and recommends that judgment be entered against the defendants and in favor of the Trustee.

The court has jurisdiction to review and determine this matter under 28 U.S.C. §§ 1334(b) and 157(a). Because the gravemen of the Trustee's complaint is a breach of contract action arising from the sale of a reorganized debtor's assets to a non-debtor third party, the court has determined that this adversary proceeding is not a core proceeding under 28 U.S.C. § 157(b)(2). Rather, it is a non-core proceeding heard under 28 U.S.C. § 157(c)(1) which requires submission of proposed findings of fact and conclusions of law to the District Court for its consideration.

**FINDINGS OF FACT**

**A.    Background**

On January 22, 2002, Claire Transport Inc. ("Debtor") filed for relief under Chapter 11 of the Bankruptcy Code and was thereafter continued in possession of its property and management of its affairs. The Debtor was engaged in the business of providing airport limousine service and other ground transportation. A Chapter 11 Plan of Reorganization ("Plan") was filed and confirmed on December 17, 2002 without objection from creditors. Approximately one year later, in the face of a court motion for entry of a final decree, the Debtor voluntarily converted its case to a Chapter 7 case pursuant to Bankruptcy Code § 1112(b).

Thereafter, Steven P. Kartzman ("Trustee") was appointed as the Chapter 7 trustee to investigate, liquidate and administer the Debtor's estate.

From his investigation of the Debtor's post-confirmation operations the Trustee determined that sometime after July 2003, certain of the Debtor's assets, including its customer list and telephone number, were transferred to an entity known as Studio Transportation ("Studio"). Studio was owned and operated by the Debtor's insiders and was engaged in the same business as the Debtor. In fact, Studio operated from the same business premises as the Debtor. The Trustee further ascertained that the Debtor did not receive any funds from Studio as a result of the transfers of the Debtor's property to Studio. The Trustee also learned that in May 2004 Studio sold all of its assets to Affordable Luxury Limousine Service, Inc., d/b/a All Transportation Network ("ATN") pursuant to an Asset Sale Agreement dated May 13, 2004 ("ASA"). A promissory note was given to Studio by ATN and payment was guaranteed by Michael Zappone ("Zappone"). The Trustee further determined (i) that ATN made the $5,500 note payments only for the period May 2004 through November 2004, and (ii) that as a result, Studio and the Debtor's insiders commenced suit against ATN and Zappone in the Superior Court of New Jersey, Law Division, Bergen County ("State Court Action").

Based on this investigation, the Trustee filed adversary proceedings against the Debtor's insiders to recover estate property and set aside fraudulent transfers. As a result of this litigation the Trustee obtained, <u>inter alia</u>, (i) avoidance of the transfer of the Debtor's assets to Studio and (ii) a judgment determining that the ASA and promissory note entered into by Studio and ATN, as well as the Zappone guaranty were property of the Debtor's estate under 11 U.S.C. § 541.

### B. <u>Trustee's Adversary Proceeding</u>

Rather than join the State Court Action, the Trustee determined that an adversary proceeding in bankruptcy court provided the better venue. In May 2007, the Trustee filed a complaint against

3

ATN and Zappone that asserted causes of action for breach of contract, unjust enrichment and turnover of property under 11 U.S.C. § 542.

From the outset this case has been marked by delay. Initially, both ATN and Zappone failed to answer the complaint. In fact, the Defendants twice failed to file answers. After the second defaults were noted on the docket, proof hearings were scheduled for February 4, 2008. (Dkt. #35 and #36) Prior to the return date for the hearings the Defendants retained new counsel and moved to vacate the defaults. (Dkt. #40) The Defendants' motion was twice adjourned and thereafter settled, resulting in a Joint Order Scheduling Pretrial, dated February 27, 2008 ("First Pre-Trial Order"). (Dkt. #49)

Under the First Pre-Trial Order all discovery was to have been completed by May 23, 2008, with the trial to commence on July 16, 2008 at 10:00 a.m. These dates proved to be too optimistic and an Amended Joint Order Scheduling Pretrial Proceedings and Trial dated May 1, 2008 ("Amended Pretrial Order") was entered. (Dkt. #52) Under this order all discovery was to be completed by July 11, 2008 and the trial was scheduled for October 1, 2008. Several days after entry of the Amended Pretrial Order the Trustee moved to compel the Defendants to answer the Trustee's first set of interrogatories, document requests and admissions. (Dkt. #54) No opposition was filed by the Defendants and the court entered an order (i) compelling the Defendants to serve answers to the Trustee's discovery request within 60 days and (ii) providing that, if the discovery was not supplied, the Defendants' answers and affirmative defenses could be stricken and defaults entered. (Dkt. #55)

Approximately one month later, the parties submitted a Second Amended Joint Order Scheduling Pretrial Proceedings and Trial ("Second Amended Pretrial Order") which once again

rescheduled the trial for December 3, 2008 and set October 15, 2008 as the cutoff date for all discovery. (Dkt. #57) As of mid-August 2008, Defendants still failed to provide the Trustee with answers to his first requests for discovery issued in March 2008. More specifically, the Defendants had neither answered the Trustee's request for document production nor answered the Trustee's request for admissions. Further, the Trustee believed that the Defendants' answers to the Trustee's interrogatories were largely non-responsive. Accordingly, on August 20, 2008, the Trustee again moved to strike the Defendants' answers. (Dkt. #59) The Defendants filed an untimely cross-motion to strike the complaint, alleging that the Trustee should be sanctioned for failing to respond to their discovery requests. (Dkt. #60)

At the hearing, the court directed the parties to adjourn to a conference room to agree on a production timetable that was realistic but short. Subsequently, the parties advised the court that the Defendants would produce the outstanding discovery by September 26, 2008. The court thereupon adjourned the motions to October 27, 2008 in order to provide a means for resolving any residual discovery disputes. Regrettably, once again the Defendants largely failed to comply with outstanding discovery demands. Their sole response was to produce one box of documents, unaccompanied by any written response to the Trustee's request for production of documents. The Defendants did not answer the Request for Admissions and did not supplement their interrogatory responses. (Dkt. # 62 ¶ 4) At the October 27, 2008 hearing the Defendants were directed to comply with each outstanding discovery request from the Trustee and the hearing was further adjourned to a December date. All of these terms were embodied in an order dated October 31, 2008. (Dkt. #63) Additionally, the Defendants' motion to strike the Trustee's complaint was denied. (Dkt. #65)

Once again, the Defendants failed to completely comply with their production obligations.

The court's October 31, 2008 order required the following:

> By December 1, 2008, the Defendants shall provide Plaintiff with a breakdown of any and all sales reports upon which they rely for any affirmative defenses in this proceeding. For purposes of this order, the term breakdown means identification of the source of business (i.e., Claire Transportation Studio vs. ATN) and amounts generated by said accounts for the relevant periods.
> By December 1, 2008, the Defendants shall provide supplemental responses to Interrogatory Numbers 10 through 15.
> By December 1, 2008, the Defendants shall provide a written response to the Request for Production of Documents served by the Plaintiff.
> By December 1, 2008, the Defendants shall produce the documents identified on Schedule A of the Subpoena in a Case Under the Bankruptcy Code, dated October 6, 2008.
> By December 1, 2008, Plaintiff shall provide responses to the Interrogatories served by the Defendants.
> By December 1, 2008, Plaintiff shall produce any customer lists in his custody, possession or control. For purposes of this order, the term customer list means a list of customers included in the sale of the assets from Clair Transport/Studio to ATN.

By December 3, 2008, the Trustee had not received any of the discovery enumerated above. (Dkt. #67 ¶ 3) Presumably to provide more time for production, the parties agreed to enter into a Third Amended Joint Scheduling Order which extended the discovery due date to March 14, 2009 and set a trial date for June 10, 2009. (Dkt. # 68) Thereafter, they again agreed to a Fourth Amended Joint Scheduling Order that extended the discovery due date to June 15, 2009 and set the trial for September 9, 2009. (Dkt. # 70)

Despite these various extensions of the discovery deadlines, in June 2009, the Trustee again filed a motion to strike the Defendants' answers based on the Defendants' failure to serve timely written answers to discovery or to appear for a scheduled deposition. (Dkt. #72) On the hearing date the court made it very clear that it expected that the remaining documents would be produced

and that the deposition would be promptly rescheduled. As a result, an Interim Order Regarding Plaintiff's Motion to Strike Defendants' Answers and Affirmative Defenses was entered on June 24, 2009 (Dkt. # 76) that required production of documents by 3:00 p.m. on June 26, 2009 and that the deposition be held on July 1, 2009. Subsequently, the Trustee requested, and the court granted, an adjournment of the trial to November 18, 2009. As reflected in the Trustee's adjournment request, the trial was adjourned because the Trustee was awaiting production of documents.

Rather than produce the requested documents, approximately two weeks prior to the trial date, the Defendants electronically filed a summary judgment motion. Appended to the summary judgment motion was an incomprehensible exhibit consisting of 2088 pages. In a telephone conference on November 19, 2009, the Defendants' counsel was advised by the court that the summary judgment motion was untimely under the terms of the scheduling order and that it would not be heard by the court. Counsel for the Defendants was also advised that if the Defendants intended to rely on this 2088 page exhibit they needed to produce it to the trustee and prepare it in a manner that could be understandable and useful at trial. Trial was set for December 9, 2009 at 10:00 a.m. Because of health issues experienced by the Defendants' counsel, the trial was further adjourned to a final date of January 15, 2010 pursuant to an Order Regarding Pre-Trial Production and Scheduling Trial. (Dkt. #89) Importantly, the first paragraph of that order provided:

> By no later than December 29, 2009, counsel for the Defendants shall produce to counsel for the Plaintiff a hard copy of or flash drive containing the exhibits that the Defendants intend to rely upon at the time of trial.

Remarkably, this deadline was also not observed by the Defendants. Instead, the Defendants' trial exhibits, including the 2088 page exhibit previously attached to the Defendants' summary judgment

7

motion, were electronically filed on the afternoon of January 14, 2010. (Dkt. # 92)

Lacking the timely submission of the Defendants' trial exhibits, the Trustee made a Motion in Limine to Exclude Evidence and Testimony. (Dkt. #93) The Trustee advanced three grounds for exclusion of exhibits and testimony. First, he asked that exclusion be granted as a sanction under Federal Rule of Civil Procedure ("Rule") 16(f) for failure to obey the court's directive in the Fourth Amended Joint Scheduling Order that all trial exhibits shall be filed seven (7) days prior to trial.[1] Second, the Trustee argued that Bankruptcy Code § 105 should be employed to bar introduction of trial exhibits because the Defendants did not comply with the January 5, 2010 Order Regarding Pre-Trial Production and Scheduling. Lastly, the Trustee contended that the 2088 page exhibit created for the summary judgment motion should be barred because the Defendants never produced the exhibit prior to the close of discovery despite the many extensions of the deadline that were afforded. The Trustee noted that the discovery period spanned more than two years. Agreeing with the Trustee that the Defendants' failure to timely provide discovery and to timely produce trial exhibits placed the Trustee at an unfair disadvantage, the Court excluded the exhibits and the testimony thereon.

Notwithstanding the age of the adversary proceeding and the lengthy discovery period, the circumstances of this case are largely straightforward as reflected in the following facts excerpted from the Joint Stipulation of Undisputed Facts filed by the parties on December 2, 2009. (Dkt. # 83) In pertinent part, the undisputed facts are as follows:

> In or about October 2003, and then again in or about 2004, on behalf of defendant ATN, defendant Michael Zappone ("Zappone")

---

[1] The Trustee points out that the Fourth Amended Scheduling Order was actually the sixth such order entered. Prior orders pertaining to scheduling discovery and trial dates were entered on October 9, 2007, February 27, 2008, May 1, 2008, July 7, 2008 and January 13, 2009. All of the orders required trial exhibits to be filed 7 days prior to trial.

8

negotiated with Tim O'Reilly and/or Peter O'Reilly for the purchase of Studio's business. Zappone personally conducted all of the negotiations and examination of the Debtor's records for ATN in connection with the acquisition of the subject assets.

During the negotiations and examination period, and subject to a Confidentiality Agreement, Tim O'Reilly and/or Peter O'Reilly made available to the Defendants Microsoft Excel spreadsheets and other records that detailed the Debtor's income and expenses, including bank statements and deposit slips. Zappone was provided access to all of the documents that he requested. Included in the Debtor's revenues were amounts for trip base charges, plus amounts for STC charges, fuel surcharges, tolls and parking.

Zappone reviewed the records made available to him from the Debtor and saw that the figures showed $1 million per year in gross sales.

On or about May 13, 2004, ATN entered into an Asset Sale Agreement to purchase the assets of Studio for the sum of $267,000, subject to adjustments of the purchase price based upon pre-determined revenue benchmarks of $1,000,000 per year. The Asset Sale Agreement was drafted by Zappone, which he admitted in his deposition.

Contemporaneously with the execution of the Asset Sale Agreement, ATN made and delivered to Studio a Promissory Note in the principal amount of $237,000 (the "Note"). The Defendants have admitted this fact in discovery. Among other things, the Note required monthly payments of $5,500 to Studio. The language in the Promissory Note describing the purchase price and adjustment in the same language that Zappone drafted for the Asset Sale Agreement. The Note provides for payment of attorneys' fees for all costs for collecting upon the Note.

At the same time, Zappone guaranteed the payment of the Note pursuant to a Personal Guarantee Agreement (the "Personal Guarantee"). The Defendants have admitted this fact in discovery.

The closing on the sale occurred on or about May 13, 2004. At closing, ATN paid Studio $16,000. Thereafter, between the period from May 13, 2004 through November 2004, ATN made $5,500 monthly payments to Studio under the Note. ATN was given a credit

9

at closing of $14,000 for pre-paid insurance.

Since December 2004, neither ATN nor Zappone has made any payments to Studio under the Note and/or Personal Guarantee. The Defendants have admitted this fact in discovery.

Notice of the Defendant's default under the Note has been provided to the Defendant.

On May 4, 2004, Plaintiff, without notice to Zappone and ATN, commenced an adversary proceeding against Peter O'Neill seeking a monetary judgment and to avoid the fraudulent transfer of assets sold by Studio to ATN under the Asset Sale Agreement (the "Adversary Proceeding").

Peter O'Neill defaulted in the Adversary Proceeding and Final Judgment by Default was entered against him on March 12, 2007 (the "Final Judgment"). Specifically, a monetary judgment was entered against Peter O'Neill for the sum of $61,000. Moreover, the transfer of certain bankruptcy estate assets by the Debtor to Studio was avoided, including the phone number, good will and customer list. Furthermore, by way of the final Judgment, the Bankruptcy Court (i) declared as property of the Debtor's bankruptcy estate the Asset Sale Agreement, Note and Personal Guaranty; (ii) avoided Peter O'Neill's interest in same and (iii) declared that the Asset Sale Agreement, Note and Personal Guaranty were subject to administration as estate assets by Plaintiff.

Based upon the Debtor's Statement of Financial Affairs, the Debtor's gross revenues for the period from January through December 2000 were $1,043,535.

Based upon the Debtor's Statement of Financial Affairs, the Debtor's gross revenues for the period from January through December 2001 were $1,227,195.

The Debtor's Profit & Loss statement for the period from January through December 2002 reflects total revenue of $984,687.15.

The Debtor's Profit & Loss statement for the period from January through December 2003 reflects total revenue of $847,749.53.

The Debtor's Profit & Loss statement for the period from January through December 2004 reflects total revenue of $108,412, although the Debtor operated only through February 2004 before converting to Chapter 7 and ceasing operations. On an annualized basis, revenues for 2004 would have been between $650,472 and $791,408. The tax return prepared for the Debtor's bankruptcy estate for 2004 reflects the same figure of $108,412.

Based upon the Debtor's Profits and Loss Statements, in 2002, Revenues to the Debtor from house accounts totaled $247,099.31. In 2003, revenues to the Debtor from house accounts totaled $235,086.90.

Following the closing on the sale, ATN raised the base charge that it charged to all of the Debtor's customers by approximately $10.00 per trip. The charge also increased certain other charges, such as STC charges and tips, which are based upon a percentage of the base charge.

Following the closing on the sale, ATN required all of the Debtor's customers to pay for each trip by credit card at the time of transport.

The Defendants produced certain spreadsheets to the Trustee during the course of this adversary proceeding. In support of its contention that they have no further payment obligations under the Note and Personal Guaranty, the Defendants rely upon ATN's Commission Reports for the period from January 1, 2005 through November 27, 2006, which reflects revenues from base charges from the Debtor's customers at roughly $275,000.

Neither ATN nor Zappone generated a Commission Report for the post-closing period from May 2004 through December 2004. The Defendants did not prepare or consult any specific report in or about November 2004 in connection with their decision to cease making payments under the Note and Personal Guaranty. In the summer or fall of 2009, and for purposes of this litigation, the Defendants prepared a report that shows ATN's sales volume for 2004, including the volume generated by the Debtor's former customers. The Defendants never produced a hard copy of the 2004 report, but instead provided a copy on a CD.

The Commission Report prepared by the Defendants for the

11

period from January 1, 2005 through November 27, 2006 is designed to reflect all of the Debtor's trips for the respective period. Zappone acknowledged during his deposition that the Commission Report failed to include all trips that were provided by ATN to the Debtor's customers during the period covered by the report.

The gross revenue figures reflected on the Commission Reports and on the Excel spreadsheet for 2004 include only base charges, and no other additional charges, such as STC charges, fuel surcharges, tolls, and parking, which were included in the Debtor's gross revenue figures.

In support of the Trustee's case the following exhibits were marked and received in evidence:

P-1    Certificate of Incorporation for Studio Transportation Inc.

P-2    Claire Transportation's Statement of Financial Affairs

P-3    Claire Transportation's Profit & Loss Statement for 2002

P-4    Claire Transportation's Profit & Loss Statement for 2003

P-5    Claire Transportation's Profit & Loss Statement for 2004

P-6    2004 Form 1120 for Claire Transportation's Bankruptcy Estate

P-7    Asset Sale Agreement dated May 13, 2004

P-8    Promissory Note dated May 13, 2004

P-9    Personal Guaranty Agreement dated May 13, 2004

The ATN exhibits excluded by the court consisted of five documents. The Defendants exhibits were comprised of documents filed on the court docket (Claire Transport Chapter 11 petition and the Trustee's adversary complaint), the settlement between the Trustee and the Debtor's insiders, the Purchase Agreement and Promissory Note for the assets of Studio, and a printout of ATN sales records. This last exhibit is the document which ATN was required to produce on or

before December 29, 2009.

## CONCLUSIONS OF LAW

The court based its decision to exclude trial exhibits and testimony primarily on Rule 16(f) and Rule 37(b)(2)(A)[2]. It granted this extraordinary relief only after repeatedly granting the Defendants extensions of time to comply with deadlines contained in prior orders directing compliance with the Trustee's discovery requests.

In pertinent part, Rule 16(f) states:

> ... the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney...fails to obey a scheduling order or other pretrial order.

Fed. R. Civ. P. 16(f)(1)(C).

Rule 37(b)(2)(A) provides a broad range of sanctions for not obeying a discovery order, including prohibiting introduction of evidence, and presenting witnesses. Fed. R. Civ. P. 37(b)(2)(A)(ii) and (iii). "Rule 37 is written in Mandatory terms, and 'is designed to provide a strong inducement for disclosure of Rule 26(a) material.'" *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir. 1995)(quoting *Harlow v. Eli Lilly & Co.,* 1995 WL 319728 at *2 (N.D. Ill. May 25, 1995)). In general, sanctions under Rule 37 serve to (i) ensure that a party does not profit from its own failure to comply, (ii) obtain compliance with court orders in the case at hand and (iii) deter litigants in general from disregarding discovery obligations. *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

---

[2] Rule 16(f) and Rule 37(b)(2) are made applicable to adversary proceedings by Fed. R. Bankr. P. 7016 and Fed. R. Bankr. P. 7037.

There is no question that exclusion of evidence for violation of a discovery order is an extreme sanction. *In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999)(citing *Dudley v. South Jersey Metal, Inc.,* 555 F.2d 96, 99 (3d Cir. 1977)). However, the Third Circuit has recognized that even where the sanction amounts to dismissal of a claim, exclusion can be appropriate. *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003). In *Ware v. Rodale Press* the court applied the factors enumerated in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) to determine whether the trial court properly precluded the plaintiff introducing any evidence of damages at trial:

> (1) The extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or counsel was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

The trial court is not required to find each factor applicable prior to imposing a sanction. *Ware*, 322 F.3d 218, 221 (citing *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir. 1988)). However, the trial court should weigh the various factors in order to assure that the sanctions of dismissal is "justly merited." *Poulis,* 747 F. 2d at 870.

This court considered the question of Zappone's and ATN's personal responsibility as intertwined with consideration of whether the conduct of the parties and their attorney was willful or in bad faith. The court believes the conduct to have been willful, but just short of bad faith. The Defendants failed to file answers on two separate occasions, under the guidance of two separate attorneys. Motions were necessary to vacate both defaults. The court believes it reasonable to infer from this conduct that the Defendants knew of their obligations and ignored them. Moreover, this

14

pattern of noncompliance continued throughout the adversary proceeding, as evidenced by the history of this matter set forth above. Zappone and ATN were repeatedly afforded extensions of the deadlines for document production for a period of almost two years. As the principal of ATN and the individual who negotiated the terms of the ASA and the Promissory Note, Zappone plainly understood that financial records relating to sales derived from assets acquired by ATN under the ASA were critical both to the Trustee's case and the Defendants' defense. Indeed, the Defendants were astonishingly dilatory: not one discovery deadline was completely met, notwithstanding the issuance of six different discovery orders.

The purpose of discovery is to avoid surprise at trial by identifying the facts in dispute and clarifying the issues. *See Medford v. Metro. Life Ins. Co.,* 244 F. Supp. 2d 1120, 1123 (D. Nev. 2003). Here, the Trustee was repeatedly hampered, and therefore prejudiced, in his efforts to ascertain the basis for the Defendants' defenses to the Trustee's breach of contract action. The Defendants' counsel repeatedly asserted that ATN ceased payments on the Promissory Note because the customer lists purchased failed to yield the revenue volume represented to the Defendants. Further, the Defendants claimed that ATN's financial records would substantiate this defense. Nonetheless, these records were never fully produced, despite assurances they were available and would be produced. Without this discovery, the Trustee was not properly prepared for trial. He faced the prospect of trial by ambush because the Defendants' Trial Exhibits included a 2088 page document that had never been produced to his counsel.

In response to the Trustee's Motion in Limine this court never considered any alternative sanctions, because having reached the trial date still without the promised discovery, there was no sanctions adequate to remedy the prejudice to the Trustee. Despite the Trustee's several prior

15

requests to strike the Defendants' Answer and Affirmative Defenses because of the Defendants' failure to provide discovery the court declined to do so because (i) it believed the information requested to be essential for both parties, and (ii) there was never an indication that the discovery could not be produced. When the Defendants appeared on the trial date - still having failed to produce discovery - there was simply no lesser sanction that could be imposed and that would leave the Trustee trial ready.

The meritoriousness of the Defendants' defense is difficult to ascertain because it depends in large measure on the 2088 page exhibit excluded as a result of the Defendants failure to produce it. Under the terms of the Promissory Note ATN was obligated to pay $5,500 per month for 48 months. (P-8) Adjustments to the monthly payments could be made at the 12th, 24th and 36th month if the sales volume attributable to the purchase assets decreased from $1 million per year. The Defendants claimed that well before even the 12th month the sales volume was not as represented and that ATN was thus entitled to cease payment. In ATN's view, to do otherwise risked overpayment. While this defense is questionable as to the first 12 months of payments, if substantiated, it might reduce the payments due from ATN for the remaining term of the Promissory Note. Of course, it is equally possible that the information contained in the 2088 page exhibit was incomplete and did not fully account for all of the sales volume generated by the purchase assets. By not timely producing the financial information represented by the exhibit, the Defendants deprived the Trustee of the opportunity to examine and test the accuracy of ATN's financial records prior to trial.

Finally, it should be noted that the Defendants also did not comply with the direction in the Fourth Amended Scheduling Order to file proposed findings of disputed facts or proposed conclusions of law. When these omissions are combined with the failure to timely provide

16

discovery and timely file trial exhibits, it is apparent that both the Trustee and the court were not able to prepare for the trial date. Instead, as the Trustee noted, the court and the Trustee were left to guess what the Defendants would prove at trial. Because the court excluded the trial exhibits and testimony based on those exhibits it took no other testimony from Zappone, the sole witness for the Defendants, as his unsupported testimony would not have been accorded more than minimal weight.

Based on the Trustee's exhibits admitted into evidence, this court recommends that judgment be entered in his favor on Counts One, Four and Five of the complaint, which assert breach of contract. Under New Jersey law a prima facie case for breach of contract requires demonstration of (i) the existence of a contract; (ii) breach of the contract; (iii) damages resulting from the breach; and (iv) that Plaintiff performed his contractual duties. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,* 210 F. Supp. 2d 552, 561 (D.N.J. 2002)(citing *Pub. Serv. Enter. Grp., Inc. v. Phila. Elec. Co.,* 722 F. Supp. 184, 219 (D.N.J. 1989)). The Asset Sale Agreement dated May 13, 2004 (P-7), and the Promissory Note dated May 13, 2004 (P-8) establish the contract. In particular, the Promissory Note identifies the parties, states the amount due and sets forth the payment terms as well as the remedy in the event of a default. Further, ATN does not deny that it has not made payments since December 2004. Nor has Zappone made any payments under his Personal Guaranty.

As further reflected in the Joint Stipulation of Undisputed Facts, the Defendants do not deny that the closing occurred in May 2004 and that the purchased assets were transferred to them. Thus, all of the elements of a prima facie case for breach of contract are established.

Additionally, these facts recited in the Joint Stipulation of Undisputed Facts amply support a finding of anticipatory breach of contract. The New Jersey Supreme Court has stated that "[a]n anticipatory breach of contract is a definite and unconditional declaration by a party to an executory

17

contract - through word or conduct - that the party will not or cannot render the agreed upon performance." *Ross Sys. v. Linden Dari-Delite, Inc.,* 35 N.J. 329, 341-42 (1961). *See also In re Carlisle Homes, Inc.,* 103 B.R. 524, 537 (Bankr. D.N.J. 1988). An anticipatory breach "gives rise to a claim for specific performance, or for damages for total breach; i.e., for damages based on the injured party's remaining rights to perform under the contract." *Cipala v. Lincoln Tech. Inst.,* 354 N.J. Super. 247, 251 (App. Div. 2002), *aff'd in part, rev'd in part,* 179 N.J. 45 (N.J. 2004) (citing *Stopfood v. Boonton Molding Co.,* 56 N.J. 169, 188 (N.J. 1970)). Here, ATN's conduct, by refusing to make the payments due under the Promissory Note, constituted an anticipatory breach of contract entitling the Trustee to sue for damages. The Trustee requests that damages be allowed in the amount of $237,000, less the amounts paid by ATN. Under the terms of the Personal Guaranty (P-9) Zappone unconditionally guaranteed payment of the ATN obligation and agreed to payment of legal fees in the event that collection efforts were required. Thus, judgment should also be rendered against Zappone for the damages resulting from ATN's anticipatory breach of contract.

In Count Eight of the complaint the Trustee also seeks attorneys fees allowable under the terms of the Promissory Note and the Personal Guaranty in the amount of $83,495. The services were largely performed by Mr. Brief at the rate of $250 per hour. The legal services are well documented in the Certification of Legal Services Provided to Plaintiff By Attorneys for the Trustee Through January 15, 2010. (Dkt. # 98) The time is recorded in increments of .10 and the services are amply described. As is readily evident from the history of this matter, the bulk of the services were incurred by counsel's efforts to extract production of overdue discovery and to compel compliance with various scheduling orders. It is recommended that they be allowed as requested. While the fees are substantial, in significant measure they are a product of the Defendants' conduct,

and the burden should fairly fall on the Defendants as provided in the Promissory Note and Guaranty rather than the bankruptcy estate.

## CONCLUSION

It is recommended that the Defendants trial exhibits and testimony thereon be excluded as a sanction for failure to comply with discovery orders and pretrial orders. This court also recommends that judgment be entered against ATN and Zappone in the amount of $237,000, less amounts paid, for breach of contract and that legal fees be allowed to the trustee in the amount of $83,495.

Dated: October 1, 2010  /s/ 
NOVALYN L. WINFIELD
United States Bankruptcy Judge